UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES GRIMES,

                                             **DECISION AND ORDER**

                      Plaintiff,                      1:17-CV-01302 (JJM)

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,[1]

                    Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [11, 14].[2] The parties have consented to my jurisdiction [9]. Having reviewed the parties' submissions [11, 14, 15], the action is remanded for further proceedings.

## BACKGROUND

        In April 2013, plaintiff, who was 46 years old, filed an application for SSI, alleging a disability onset date of January 1, 2010 due to diabetes, neuropathy "with shooting pains in hands, legs and feet", numbness in hands and feet, retinopathy, and depression.

---

[1]     Nancy A. Berryhill is currently the Acting Commissioner of Social Security. She is therefore substituted for the "Commissioner of Social Security" as the defendant in this suit. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Administrative record [8], pp. 215-20, 231. After plaintiff's claims were initially denied (id., pp. 113-16), an administrative hearing was held on February 1, 2016 before Administrative Law Judge ("ALJ") Sharon Seeley, at which plaintiff, who was represented by counsel, and Melissa Fass-Karlan, a vocational expert, testified. Id., pp. 28-89.

The opinion evidence of plaintiff's physical impairment included a September 28, 2012 consultative internal medicine exam performed by Hongbiao Liu, M.D. in connection with a prior application for benefits Id., pp. 315-18. His exam revealed that plaintiff's heart had a "[r]egular rhythm. [Point of maximal impulse ("PMI")] in the left fifth intercostal space at midclavicular line. No murmur, gallop, or rub audible". Id., p. 317.[3] Dr. Liu diagnosed plaintiff with diabetes, diabetic neuropathy and retinopathy, hypertension, depression and hyperlipidemia.[4] Id., pp. 317-18. Plaintiff was assessed with mild limitations for prolonged walking, bending, and kneeling because of his diabetic neuropathy. Id., p. 318. A second consultative internal medicine exam was performed by Abrar Siddiqui, M.D. on July 20, 2013. Id., p. 363. Dr. Siddiqui's heart examination remained identical to Dr. Liu's earlier examination. Id., p. 365. He diagnosed plaintiff with hypertension, diabetes and depression, but assessed no limitations in plaintiff's ability to sit, stand, climb, push, pull, or carry heavy objects. Id., pp. 365-66.

It appears that beginning approximately a year and a half after Dr. Siddiqui's consultative examination, plaintiff began complaining of shortness of breath. In November

---

[3] Although not expressly stated, this appears to be a normal result. See Santana v. Barnhart, 2008 WL 10659413, *6 (N.D.N.Y. 2008) ("the doctor observed normal results, with the point of maximum impulse . . . at the fifth left intercostal space . . . within the mid-clavicular line").

[4] Hyperlipidemia "can cover many conditions, but for most people, it comes down to high cholesterol and high triglycerides". Richards v. Commissioner of Social Security, 2017 WL 892345, *4 (E.D. Mich.), adopted, 2017 WL 878025 (E.D. Mich. 2017) (internal quotations omitted).

2015, a chest x-ray was taken, but there was "no acute cardiopulmonary process" found. Id., p. 517. In January 2016, plaintiff was seen at the Advanced Cardiology Group for increasing shortness of breath. Id., pp. 527-28. After a February 2016 stress test was abnormal (id., p. 604), plaintiff underwent a cardiac catheterization in March 2016 (id., pp. 538-39), and then quadruple coronary bypass surgery on April 18, 2016. Id., p. 585. Upon his April 22, 2016 discharge, he was permitted to walk, but was not permitted to drivel or lift more than ten pounds. Id., p. 594.

At plaintiff's May 3, 2016 post-surgical follow-up, it was noted that "[f]rom a purely surgical standpoint [it] appears as though [plaintiff] is doing well postoperatively in that his sternum remained stable and his wounds are healing well". Id., p. 618. A chest x-ray taken that day revealed that "[t]he heart and mediastinum", as well as the "pulmonary vasculature" were "normal". Id., p. 620.

Plaintiff continued to have "considerable edema in the right calf" and "some vague chest discomfort with activity" at his subsequent cardiology examination on May 24, 2016. Id., pp. 622-23. At that time, he was described as "doing well from a cardiac standpoint". Id., p. 623. However, until the edema improved, his "exercise treadmill testing [and] cardiac rehab" were deferred. Id. On June 9, 2016, plaintiff was seen by Dr. Liu, who had become his treating physician. Id., p. 624. Dr. Liu found that plaintiff's heart had no murmurs, rubs or gallops (id., p. 624), but diagnosed plaintiff with chronic heart failure. Id., p. 626. A June 10, 2016 doppler study revealed a thrombosis in his lower extremity. Id., pp. 628-29. Because of elevated blood pressure at a July 21, 2016 visit with Dr. Liu, plaintiff was taken to the emergency room. Id., p 661. At the hospital his heart sounds were normal and a chest x-ray revealed that there was no pulmonary embolism or "acute active pulmonary disease". Id., pp. 639, 662.

ALJ Seeley's August 8, 2016 decision was issued approximately two and a half weeks after plaintiff's emergency room visit. Id., pp. 10-22. She assessed plaintiff with several severe physical impairments, including diabetes, peripheral neuropathy, and coronary artery disease. Id., p. 12. Plaintiff was determined to have the residual functional capacity ("RFC") to perform less than the full range of light work. Id., p. 15. Physically, plaintiff was able to "lift/carry and push/pull up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk six hours in an eight-hour workday, but must be able to alternate after 30 minute[s] to sitting five minutes; frequently handle or finger with the bilateral upper extremities". Id.

In reaching that RFC, ALJ Seeley accorded "some weight" to the 2012 and 2013 consultative opinions of Drs. Liu and Siddiqui "because the record lacks an opinion from a treating source". Id., p. 20. She explained that plaintiff's physical RFC was "supported by examination revealing shoulder range of motion limitations, squatting difficulty, and heel/toe walking difficulty, as well as [his] more recent coronary artery disease", and that additional physical limitations were not warranted "given the lack of examinations indicative of further musculoskeletal abnormalities or neurological deficits, [his] conservative level of care, and his acknowledged ability to perform basic activities of daily living". Id. With respect to plaintiff's coronary heart disease, ALJ Seeley concluded that "[w]hile the post-hearing documents show that the claimant has a cardiovascular impairment, he appears to be recovering from bypass surgery. The record does not indicate that this impairment has resulted in or can be expected to result in greater limitations than those reflected in the [RFC] for a period of 12 months or more. The [RFC] thus reasonably accommodates the claimant's coronary artery disease, now status post-bypass". Id., p. 18.

Based on the RFC and other factors, ALJ Seeley determined that while plaintiff was unable to perform his past relevant work, there were sufficient jobs in the national economy that he was capable of performing, and therefore was not disabled since April 22, 2013, the date the application for SSI was filed. Id., pp. 19-22. ALJ Seeley's decision became the final decision of the Acting Commissioner on October 23, 2017, when the Appeals Council found no basis for changing ALJ Seeley's decision. Id., pp. 1-5. Thereafter, this action ensued.

## DISCUSSION

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that "remand is required for further development into [his] condition following his quadruple bypass surgery in April of 2016". Plaintiff's Memorandum of Law [11-1], Point 1 (emphasis omitted). Specifically, plaintiff contends that the opinions of Drs. Liu and Siddiqui "rendered years prior to [his] development of cardiac symptoms and subsequent

quadruple bypass surgery" were stale, and that ALJ Seeley's "lay analysis of [his] post-surgical condition [was not] compelling enough to warrant departure from the . . . 'general rule' forbidding an ALJ from interpreting raw medical data without the assistance of some useful medical opinion evidence which translates a claimant's impairments into functional terms". Id., p. 12.

B.      Was the RFC Supported by Substantial Evidence?

"[M]edical source opinions that are stale . . . and based on an incomplete medical record may not be substantial evidence". Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd, 652 Fed. App'x 25 (2d Cir. 2016). Generally, "[a] stale medical opinion, like one that is rendered before a surgery, is not substantial evidence to support an ALJ's finding". Pagano v. Commissioner of Social Security, 2017 WL 4276653, *5 (W.D.N.Y. 2017). However, "[t]he mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." Whitehurst v. Berryhill, 2018 WL 3868721, *4 (W.D.N.Y. 2018); Cruz v. Commissioner of Social Security, 2018 WL 3628253, *6 (W.D.N.Y. 2018) ("consultative examination is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition").

The Acting Commissioner argues that "the ALJ considered evidence after . . . Plaintiff's recovery from bypass surgery, and specifically noted that the medical records showed Plaintiff recovered from surgery". Acting Commissioner's Brief [14-1], p. 21. While there were some records indicating that plaintiff was *recovering* from surgery, the limited postoperative records failed to demonstrate that he had *recovered* from the surgery or to identify his

postoperative limitations or prognosis. As plaintiff argues, the limited post-surgical records before the ALJ Seeley demonstrated that he had not even commenced cardiac rehabilitation. Plaintiff's Memorandum of Law [11-1], p. 13. At best, the records demonstrated that plaintiff was recovering, but in the absence of identification of his postoperative limitations (if any) or prognosis, that provided little guidance for assessing his RFC.

As a layperson, ALJ Seeley was not in a position to discern plaintiff's postoperative limitations and prognosis from generalized references to plaintiff's recovery taken shortly after plaintiff's surgery before even commencing rehabilitation. *See* Williams v. Berryhill, 2017 WL 1370995, *3 (W.D.N.Y. 2017) ("an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence"); Trippett v. Commissioner of Social Security, 2018 WL 4268917, *4 (W.D.N.Y. 2018) ("[a]s a lay person, the ALJ was not in a position to interpret the bare medical findings in the record to conclude that [the plaintiff] retains the physical RFC to perform a range of light work").

Nor does the record contain any postoperative objective measures pointing to the absence of heart-related impairments or limitations. A February 2016 stress test found that plaintiff had a left ventricle ejection fraction of 38% ([8], p. 604)[5] and an April 18, 2016 MUGA scan was 36%. Id., p. 613.[6] These preoperative objective tests suggest the presence of an impairment capable of resulting in limitations, and without any postoperative tests indicating that

---

[5]     "Ejection fraction is a measurement of the percentage of blood leaving the heart upon contraction. A normal left ventricle ejection fraction is 55 to 70%." Brown v. Astrue, 2011 WL 4501094, *1 n. 2 (E.D. Mo. 2011).

[6]     "A MUGA scan is a non-invasive test that uses radioactive materials called tracers to show the heart chambers. The test can check the overall squeezing strength of the heart known as the ejection fraction." Carothers v. Commissioner of Social Security, 2009 WL 3124737, *3 n. 18 (W.D. Pa. 2009).

they changed, it is not possible for a layperson to determine whether there is an ongoing impairment. *See* Black v. Astrue, 2011 WL 2295120, *6 (W.D. Ark. 2011) ("repeat testing has revealed that Plaintiff has an ejection fraction rate of 40–49%. Although this ejection fraction rate is not low enough to meet the regulations threshold . . . it is evidence of an ongoing impairment that would result in limitations. . . . [W]ithout the benefit of an RFC assessment from Plaintiff's treating cardiologist . . . is not clear the exact level of work Plaintiff could perform").

The Acting Commissioner notes that "[p]laintiff's counsel requested an extension from the Appeals Council to submit a legal argument or additional evidence . . . . Despite the extension, no legal argument or additional evidence was submitted to the Appeals Council". Acting Commissioner's Brief [14-1], p. 19. However, it was not plaintiff's responsibility to submit records closing this gap. "Even when a claimant is represented by counsel . . . the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). It is only "where the record evidence is sufficient for the ALJ to make a disability determination [that] the ALJ is not obligated to seek further medical records". Johnson v. Commissioner, 2018 WL 1428251, *5 (W.D.N.Y. 2018).

As discussed above, absent any medical opinions concerning plaintiff's prognosis, postoperative limitations, or objective measures of plaintiff's heart function, the record was insufficient for ALJ Seeley to assess plaintiff's RFC. *See* Sotososa v. Colvin, 2016 WL 6517788, *4 (W.D.N.Y. 2016); Reyes v. Berryhill, 2018 WL 1211506, *2 (W.D. Pa. 2018) ("remand may be warranted for a failure to develop the record, even when the ALJ leaves the record open and a claimant's counsel fails to submit additional materials"). In Sepulveda v. Astrue, 2010 WL 2990111, *1 (C.D. Cal. 2010), the court likewise concluded that "the ALJ

erred by not ordering a plaintiff to undergo a consultative examination, when the post-hearing medical records did not include an assessment of plaintiff's post-surgery functional limitations or even a prognosis. . . . [T]he ALJ's failure to do so . . . where there was insufficient medical evidence in the record to determine plaintiff's post-surgery status, constituted a violation of the ALJ's special duty to fully and fairly develop the record and resulted in a decision that was based on pure conjecture."

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [11] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order, but is otherwise denied, and the Acting Commissioner's motion [14] is denied.

**SO ORDERED**.

Dated: June 18, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge